MARION FOLEY *vs.* HOTEL TOURAINE CO.

Suffolk.    December 8, 1950. — February 5, 1951.

Present: QUA, C.J., RONAN, WILKINS, WILLIAMS, & COUNIHAN, JJ.

*Negligence*, Hotel, Slippery substance. *Evidence*, Conclusion of law, Admissions and confessions. *Agency*, Scope of authority or employment.

Evidence respecting a black substance of uncertain nature, hard or crusted on top and soft underneath, and "caked on" a stairway of a hotel near an entrance from a busy street did not warrant a finding that the substance had been there so long when a patron of the hotel slipped on it and fell that the employees of the proprietor of the hotel were negligent in failing to discover and remove it.

Questions asked of a witness at the trial of an action against the proprietor of a hotel for personal injuries sustained by a patron in slipping and falling on a stairway therein, as to whether an assistant manager of the hotel with whom companions of the plaintiff talked after the accident "was to represent the hotel there while he was taking care of guests" and "had the ostensible authority at that time representing the hotel when he was dealing with guests," were properly excluded as calling for conclusions of law.

At the trial of an action against the proprietor of a hotel for personal injuries sustained by a patron in slipping and falling on a stairway therein, evidence of a conversation between companions of the plaintiff and an assistant manager of the hotel after the accident was properly excluded in the absence of anything to show the scope of the assistant manager's authority or duties at that time.

TORT. Writ in the Superior Court dated May 27, 1947. The action was tried before *Donahue*, J.

*H. A. Carney,* for the plaintiff.

*R. N. Daley,* (*P. S. Ratzkoff* with him,) for the defendant.

WILKINS, J. On May 28, 1946, about 10:45 P.M. the plaintiff, a business invitee, was hurt while descending a stairway in the defendant's hotel in Boston. The plaintiff's exceptions are to the exclusion of evidence and to the granting of the defendant's motion for a directed verdict.

The plaintiff and three other young women had entered the Tremont Street entrance leading to the coffee shop, and were walking down the stairs to the shop. The plaintiff testified that when she reached the third step from the top she was thrown down "by reason of her foot slipping upon and through a foreign substance upon that step."

The duty owed the plaintiff by the defendant is not in issue. See *Kelley* v. *Goldberg,* 288 Mass. 79, 81; *Beach* v. *S. S. Kresge Co.* 302 Mass. 544, 546; *Klironomos* v. *Rialto Theatre Co. Inc.* 325 Mass. 560. There was no evidence as to how the substance happened to be upon the step, much less that it was placed there by anyone for whose conduct the defendant was responsible. See *Wetmore* v. *McLellan Stores Co.* 315 Mass. 443; *Ventromile* v. *Malden Electric Co.* 317 Mass. 132, 135. There likewise was nothing to show that it was seen by, or was in plain view of, any employee of the defendant. See *Foley* v. *F. W. Woolworth Co.* 293 Mass. 232, 234. Direct evidence was lacking as to the length of time that the substance had been where it was. The narrow issue is whether the evidence was sufficient to permit the jury to infer that the substance had been on the step for such a length of time that it should have been discovered and removed by the defendant. *Newell* v. *Wm. Filene's Sons Co.* 296 Mass. 489, 490.

Miss Regan, one of the plaintiff's companions, testified that she saw the black substance where the plaintiff had fallen; that it was about four or five inches long, about a half inch or an inch wide, and about a quarter of an inch high; that "it was sort of smooth on top and hard, but if you pressed it, it was soft underneath and sort of jagged on the edge"; that it "had a sort of crust on top"; that it

"was hard on top, it was soft underneath the crust"; and that she knew it was soft under the crust because she pressed her fingers into it.

Miss Sullivan, another companion of the plaintiff, testified that she saw the substance on the third step; that it "was a long black streak that was very hard. To her it looked like tar or some other substance of that type"; that it "was caked on the edge of the step and was very thick," about a quarter of an inch thick; that the black substance was two or three inches back from the edge of the step; and that it was four or five inches long.

1. Accepting all the testimony as true, we think that there was not enough to charge the defendant with negligence in failing sooner to discover and to remove the substance. Its location was on a stair near an entrance from a busy street. Its nature was wholly uncertain. It was black and looked like tar "or some other substance of that type." There was no suggestion that it was sticky or gummy, as might be expected in the case of tar. That the plaintiff slipped upon and through it also would seem to indicate that it actually was not tar but was something having the appearance of tar. The smooth top, jagged edges, and the dimensions — roughly those of less than half of a foot rule — mean nothing. There was no dirt or other material upon and around it, but not present beneath it. For aught that appears it could have recently been tracked in from the street and trodden upon by other patrons. There was no question for the jury unless we are prepared to say that there is always such a question in the case of any substance, no matter how little is known about it, which is observed to be hard or crusted on top and soft underneath and, if on a stair, caked to the edge. In the absence of anything tending to show the length of time required for this particular substance to harden on the outside or soften on the inside, the direction of a verdict for the defendant was right. *Di-Angelo* v. *United Markets Inc.* 319 Mass. 143, 148–149.

2. One Hyde, the defendant's treasurer, testified in cross-examination that one Chichette on the date of the accident

was at the hotel "as the assistant manager to meet the guests." Two questions then asked by counsel for the plaintiff were excluded subject to exception: "And he (Mr. Chichette) was to represent the hotel there while he was taking care of guests?" "Whether or not he (Mr. Chichette) had the ostensible authority at that time representing the hotel when he was dealing with guests?" There was no error. The second question was palpably one of law. If the answer to the first was expected to elicit anything beyond what the treasurer had just testified, that, too, would have been a conclusion of the witness as to the legal effect of the assistant manager's relationship to the defendant. *Short Mountain Coal Co.* v. *Hardy,* 114 Mass. 197, 213. *Providence Tool Co.* v. *United States Manuf. Co.* 120 Mass. 35, 37. *Parrot* v. *Mexican Central Railway,* 207 Mass. 184, 197. *Jackson* v. *Colonial Provision Co. Inc.* 314 Mass. 177, 179–180. There is nothing in the plaintiff's contention that there was evidence that Chichette was in charge of the hotel at the time of the accident.

3. There was no error in excluding the testimony of the conversation of the plaintiff's companions with Chichette, the assistant manager, following the accident. It does not appear that he then had any duties to perform or was trying to perform them. *Boston & Maine Railroad* v. *Ordway,* 140 Mass. 510, 512–513. *McKenna* v. *Gould Wire Cord Co.* 197 Mass. 406, 412. *White* v. *Sharpe,* 219 Mass. 393, 396. *Cleary* v. *First National Stores Inc.* 291 Mass. 172, 174–175. *Parsons* v. *Dwightstate Co.* 301 Mass. 324, 327. *Liberatore* v. *Framingham,* 315 Mass. 538, 541. Restatement: Agency, § 288.

4. The plaintiff's contention with respect to the defendant's answers to interrogatories, even if the subject of a valid exception, does not merit discussion.

*Exceptions overruled.*