Botsford, J.
This negligence action concerns personal injuries sustained by the plaintiff William J. Kelly (Kelly) when he fell on the stairs at the Oak Grove station of the Massachusetts Bay Transportation Authority (MBTA). Kelly brings claims against both the MBTA and Empire Cleaning Company, Inc. (Empire) on the theory that they failed to clean the station properly, and against the MBTA only for failing to provide adequate handrails along the stairway. The plaintiff Terry Kelly claims a loss of consortium as a result of her husband’s injuries. Each defendant now moves for summary judgment pursuant to Mass.R.Civ.P. 56. Empire also moves for summary judgment on the cross claims of the MBTA. For the reasons below, Empire’s motions for summary judgment on the plaintiffs’ complaint and on the MBTA’s cross claims are allowed, and the MBTA’s motion for summary judgment on the handrail claim is denied.
BACKGROUND
The summary judgment record reveals the following facts. Any factual disputes presented have been resolved in the light most favorable to the plaintiffs. On April 29, 1997 at approximately 11:00 a.m., Kelly entered the Oak Grove MBTA station in Malden, Massachusetts. While proceeding down the stairway to the train platform, Kelly tripped and lost his balance on a piece of paper or a wrapper. (Kelly Ans. to MBTA Interrog. No. 3.) He was unable to identify the length of time the wrapper was on the stairway. (Kelly Depo. p. 66, 11.20-25.) When he reached out to grab the handrail alongside the stairway, he was unable to obtain a grip. (Kelly Ans. to MBTA Interrog. No. 3.) He fell sideways down approximately twenty steps, ending up about two or three steps from the bottom of the stairway laying across the steps. (Id.)
At the time of the accident, the MBTA had contracted with the defendant Empire for “complete cleaning maintenance of the Oak Grove MBTA station.” (MBTA contract, plaintiffs’ Ex. F.) The agreement required “continuous sweeping of all station areas to include: platforms, stairs, entrance passageways, etc.” (Id.) The contract also required that Empire “keep the stations free of dust, debris, stickers, posters, decals, unauthorized signs and graffiti. . .” (MBTA contract, plaintiffs’ Ex. G.) No Empire employee was present at *259 the Oak Grove station when Kelly fell (Empire Ans. to plaintiff Interrog. No. 3), and no records exist concerning when the station was last inspected prior to the Kelly’s fall. (Empire Ans. to plaintiff Interrog. No. 8.)[3]
The Oak Grove MBTA station was constructed in the 1970s, and the stairway and handrails were installed at that time; the station was opened to the public in 1977. (MBTA Ans. to Kelly Interrog.) The handrails are solid wood, measuring five and seven-sixteenths of an inch wide and one . and seven-sixteenths of an inch thick, and running the continuous length of the stairway. No changes have been made to the handrails since their installation. (Sullivan Aff.)
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Massachusetts Bay Transp. Authy. v. Allianz Ins. Corp., 413 Mass. 473, 476 (1992). The moving party bears the burden of affirmatively demonstrating that there is no genuine dispute of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Where the party opposing summary judgment carries the burden of proof at trial, and the moving party demonstrates that the opposing party has no reasonable expectation of establishing an essential element of his case, summary judgment is appropriate unless the party opposing the motion sets forth specific facts showing a genuine issue for trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
I. Cleaning and Maintenance of the Oak Grove Station
The plaintiffs allege that both defendants were negligent for failing to clean and maintain the Oak Grove station properly, although they focus primarily on Empire. Plaintiffs allege that Empire had a duty to provide “complete cleaning maintenance,” that Empire breached this duty when it failed to keep the stairway clear of debris, and that this negligence was the proximate cause of Kelly’s injuries. Empire’s summary judgment motion addresses this claim.[4]
For summary judgment purposes I accept as a fact that Kelly slipped on a paper or wrapper. However, there is no evidence showing the length of time the wrapper was on the stairway before Kelly fell. Kelly only saw the wrapper out of the comer of his eye as he was falling and could not tell by looking at the wrapper the length of time it was on the stairway prior to his fall. Indeed, the wrapper was never found. In order to recover, the plaintiffs must demonstrate that Empire (or the MBTA) knew or should hav j known of the presence of the paper on the stairway and failed to remove it within a reasonable time. Oliveri v. Massachusetts Bay Trans. Authy., 363 Mass. 165, 167 (1973); Welch v. Angelo’s Supermarket, Inc., 27 Mass.App.Ct. 1106 (1989) (summary judgment for defendant affirmed where no evidence presented concerning length of time green vegetable matter had lain on floor before plaintiff fell). See Sahagan v. Commonwealth 25 Mass.App.Ct. 953, 953-54 (1988) (defendant entitled to directed verdict where plaintiff, who struck non-rusty metal sign post stump on bike path maintained by the MDC, presented no evidence from which one could infer that the defendant either created the defective condition, was informed of it, or should have known about it).
Where, as here, there is no evidence regarding how long the wrapper was on the stairs, the plaintiffs’ negligence claim based on the condition of the stairs should fail. See Welch v. Angelo’s Supermarket, Inc., supra, 27 Mass.App.Ct. at 1106; Sahagan v. Commonwealth supra, 25 Mass.App.Ct. at 953. However, the plaintiffs argue that under its contract with the MBTA, Empire had a duly of continuous service and continuous cleaning, and that these contractual obligations give rise to liability on Empire’s part in the circumstances of this case.[5] There is some factual support for the argument. For instance, if the accident happened at 10:59 a.m., as the MBTA’s report states, and if the personnel schedule submitted by Empire is correct, there should have been an Empire employee on site cleaning the station at the time of the accident, and there was not. It is further unsettling, at the least, that Empire has no records of employee inspections conducted at the Oak Grove station.
Nevertheless, Empire’s contractual obligations to the MBTA did not heighten its common law duly to Kelly of reasonable care. See Corsetti v. Stone, 396 Mass. 1, 11 n. 8 (1985). In order to establish liability on Empire’s part, therefore, the plaintiffs must show that the dangerous condition, i.e. the wrapper on the stairway, existed for such a time that Empire knew or should have known of its existence. Thus, even assuming an Empire employee should have been at the Oak Grove station at the time of the accident, Empire cannot be found liable in the absence of any evidence that the wrapper was on the stairs long enough for the employee reasonably to have been aware of it — that it was not dropped the instant before Kelly’s fall.[6] Since there is none, Empire as well as the MBTA are entitled to summary judgment on the plaintiffs’ negligent cleaning claim.
II. Handrails in the Oak Grove Station.
In an effort to break his fall, Kelly reached for the handrail on the right side of the stairway. The plaintiffs claim that the handrail was inadequate and unsafe because it was difficult or impossible to grip, and that in this case, Kelly tried but was unable to hold onto the handrail, contributing to Kelly’s fall and resulting back injuries. The MBTA, as the only defendant against whom the claim of unsafe handrail is brought, has moved for summary judgment on the claim. The MBTA’s motion is based solely on the grounds that the *260 statute of repose, G.L.c. 260, §2B, applies.[7] On the ground it has argued, the MBTA is not entitled to summary judgment.
The MBTA contends that it should be given immunity from liability and suit under G.L.c. 260, §2B, the statute of repose,[8] since the handrail was installed when the Oak Grove station was constructed in the 1970s, and the station opened in 1977. Implicit in the MBTA’s argument is that the plaintiffs’ claim is one only for negligent design. The focal point of the plaintiffs’ challenge, however, is that the MBTA, as the owner of the station, was negligent in maintaining an unsafe handrail. The plaintiffs do contend that the cause of the dangerous condition was allegedly a defective design, but this does not change the nature of their claim. Property owners are not included among the parties given protection under this statute. See Klein v. Catalano, 386 Mass. 701, 715 (1982) (G.L.c. 260, §2B has the effect of granting immunity from suit only to architects, engineers, contractors, and others involved in the design, planning, construction, or general administration of improvements to real property, and of denying that protection to suppliers, owners, tenants, and others in possession or control) .[9]
Kelly claims that he was unable to obtain a grip due to the dimensions of the handrail, and he contends that the handrail does not comply with sections of the State Building Code, 780 Code Mass. Regs. §§1022.1, 1022.2.5, which were in effect at the time of Kelly’s accident. The dimensions and design of the handrail, as described in the summary judgment record, do not appear to comply fully with the cited Building Code provisions. If these provisions apply to the Oak Grove station — a point the MBTA does not consider in its memorandum[10] — then any noncompliance would serve as evidence of negligence, precluding summary judgment. Accordingly, because a factual issue remains concerning whether the MBTA was negligent, the MBTA’s motion for summary judgment on the plaintiffs’ handrail claim must be denied.
III. Empire’s Motion for Summary Judgment on the MBTA’s Cross Claims.
Under its agreement with the MBTA, Empire is contractually obligated to indemnify the MBTA in certain circumstances. In particular, the indemnification clause states that “the Contractor [Empire] agrees to indemnify, save harmless and defend the MBTA... from and against any and all suits . . . caused by or resulting from the performance of services hereunder on the part of the contractor and its employees, subcontractors or agents in the performance of the services hereunder in the performance of its agreement.” (Contract, §2.3.)
Empire has no obligation to indemnify the MBTA in this case. The only claim of the plaintiffs which remains is the one against the MBTA based on the allegedly unsafe condition of the stairway handrail. Empire’s contract focuses only on cleaning services. Because liability for the condition of the handrail falls outside of the scope of the indemnity agreement between the MBTA and Empire, Empire is entitled to summary judgment on the MBTA’s cross claims.
ORDER
For the foregoing reasons, the motions for summary judgment of the defendant Empire as to both the plaintiffs’ complaint and the MBTA’s cross claims are ALLOWED: and the motion for summary judgment of the defendant MBTA on the plaintiffs’ claim concerning the handrail is DENIED. Finally, the MBTA is entitled to summary judgment on the plaintiffs’ claim concerning the condition of the stairs.

 The record reveals two conflicting schedules concerning when Empire was required by the terms of its contract with the MBTA to have an employee present at the Oak Grove station. The schedule attached to the plaintiffs’ memorandum states that the required hours were between 6 and 10 a.m., and the schedule attached to the Empire’s memorandum states that the hours were between 7 and 11 a.m. The time of the accident is also contested in the record. The MBTA accident report states that the accident occurred at 10:59 a.m., while the MBTA accident claim report, filled out and signed by Kelly some weeks after the accident, states that the accident occurred at 11:15 a.m.

 Although in a somewhat oblique fashion, the MBTA also argues that it is entitled to summary judgment on the plaintiffs’ failure to clean claim. (See MBTA’s memorandum, pp. 5-7.)

 The MBTA appears to join in this argument.

 In this regard, I note Kelly’s testimony that he believed one or two people were walking down the subway stairs in front of him. (Kelly Depo. p. 35.)

 While there may be other defenses, the MBTA has not raised them in its summary judgment motion or its supporting memorandum.

 General Laws c. 260, §2B provides in pertinent part:
Actions of tort for damages arising out of any deficiency or neglect in the design ... of an improvement to real property of a public agency... shall be commenced only within three years next after the cause of action accrues: provided, however, that in no event shall actions be commenced more than six years after the earlier of the dates of: (1) official acceptance of the project by the public agency: (2) the opening of the real property to public use

 At the hearing on its summary judgment motion, the MBTA argued that the Oak Grove station was principally designed by a team of MBTA employees rather than an outside architectural firm, and therefore the MBTA is immune from liability for the allegedly defective design of the station’s stairway handrails. Again, the argument misunderstands the plaintiffs’ claim, which looks to the MBTA as the entity which owned and controlled the Oak Grove station at the time of Kelly’s fall, not as the entity which designed and constructed it.

 The MBTA has not addressed, for example, whether the handrails at its Oak Grove station are “grandfathered,” that is, not required to comply with the sections of the Building Code cited by the plaintiffs because those sections were not adopted until after the station was built.